### GULF, C. & S. F. RY. CO. et al. v. CITIES SERVICE CO. et al.

(District Court, D. Delaware. May 31, 1921.)

No. 1.

1. **Parties ☞76(7)—Demurrer for incapacity to sue raises question of personal capacity of plaintiff only.**

A demurrer to a declaration on the ground that it fails to show that plaintiff has any legal capacity to sue goes only to his personal capacity, and does not present the question whether the declaration shows a right of action in him.

2. **Railroads ⬤═5½, New, vol. 6A Key-No. Series—Director General held entitled to sue for interference with contract to furnish fuel oil to railroad company.**

The Director General of Railroads, during his administration, *held* to have a legal interest in an existing contract for the supplying of fuel oil to a railroad company, which entitled him to maintain an action to recover damages from one alleged to have maliciously interfered with such contract by causing the seller to refuse performance.

3. **Torts ⬤═25—Only joint tort-feasors may be joined as defendants.**

Two defendants cannot be joined in an action of tort on allegations in the declaration that "they and each of them" caused a complete breach of a contract to supply fuel oil to a railroad company, where it is not alleged that they acted in concert and it is inferable that the failure to deliver a part of the oil due under the contract was caused by acts of one defendant, and the remainder to acts of the other.

4. **Pleading ⬤═8(3)—Declaration held insufficient, as too general in its allegations.**

The declaration in an action of tort, alleging that defendants maliciously "caused, required, procured, influenced, persuaded, induced, and compelled" the breach of a contract by a party thereto, *held* insufficient in failing to set out more particularly the acts of defendants.

At Law. Action by the Gulf, Colorado & Santa Fé Railway Company and Walker D. Hines, Director General of Railroads, against the Cities Service Company and the Empire Refining Company. On demurrer to declaration. Demurrer sustained.

See, also, 270 Fed. 994.

John Biggs and Percy Warren Green, both of Wilmington, Del., for plaintiffs.

George N. Davis and Robert Penington, both of Wilmington, Del., for defendants.

MORRIS, District Judge. This is a demurrer to each of the two counts of a declaration filed in a suit instituted by Gulf, Colorado & Santa Fé Railway Company, a Texas corporation, and Walker D. Hines, Director General of Railroads of the United States, against Cities Service Company and Empire Refining Company, Delaware corporations, to recover damages from the defendants for inducing, as is alleged, a breach by Producers Refining Company, a Missouri corporation, of a contract made by and between the latter company and the plaintiff Railway Company, on the 1st day of June, 1915, for the sale and delivery by the Producers Company to the Railway Company of fuel oil in specified quantities and at specified prices during a period of five years beginning October 1, 1915.

The first count alleges, in substance, the making of the contract; the assignment thereof on November 15, 1915, by the Railway Company to Coline Oil Company, an Oklahoma corporation, and "a subsidiary company of" the Railway Company; the issuance of the proclamation of the President of the United States on December 26, 1917, appointing a Director General of Railroads, and through him taking possession and control as of December 28, 1917, of the railroads of the United States, including the railroads owned and leased by the plaintiff Rail-

way Company, its appurtenances, and the contract in question, as evidenced by an agreement of November 22, 1918, between the Director General, the Railway Company, and others; the breach of the oil contract on June 14, 1918, by the Producers Refining Company; that the defendants, for the purpose of appropriating the property, assets, business, operations, and profits of the Producers Refining Company to them and each of their own use and benefit, willfully, maliciously, deliberately, and with wanton disregard of the plaintiff, and with knowledge of the facts and circumstances alleged, "caused, required, procured influenced, persuaded, induced, and compelled the said Producers Refining Company to commit a total breach of said contract"; that the Coline Oil Company, by an agreement of July 1, 1919, transferred and assigned to the Railway Company the contract of June 1, 1915, together with all rights thereunder arising since January 1, 1918, on account of the failure or refusal of the Producers Refining Company to deliver oil under the terms of said contract, and all causes of action against any person theretofore or thereafter causing, inducing, or procuring the Producers Refining Company to fail or refuse to deliver oil under the agreement of June 1, 1915; "that the said assignment was made to the plaintiff Railway Company for its own use and the use and benefit of the United States of America (the United States Railroad Administration) as their respective interests shall appear, depending upon the time of the beginning and ending of said federal control over said plaintiff Railway Company." The plaintiffs claim damages in the sum of $10,000,000.

Each of the defendants filed separate, but identical, demurrers. The causes of demurrer assigned are:

"(1) For that it nowhere appears in said first and second counts of the said amended declaration that Walker D. Hines, Director General of Railroads of the United States, has, or at the time of filing the said amended declaration had, any legal capacity to sue.

"(2) For that it nowhere appears in the said first and second counts of the said amended declaration that there was any concerted action on the part of the defendants named therein in the commission of the alleged tort.

"(3) For that it nowhere appears in the said first and second counts of the said amended declaration in what respect or manner this defendant 'willfully, maliciously, deliberately, and with wanton disregard of the rights of the said plaintiff * * * caused, required, procured, influenced, persuaded, induced, and compelled the said Producers Refining Company to commit a total breach of the agreement.'"

[1] The first cause of demurrer assigned, being directed solely to the legal capacity of the Director General to sue, raises the single question whether the declaration discloses that the Director General is under some personal disability or incapacity, such as infancy, insanity, or the like, and does not present the question of the existence or nonexistence under the allegations of a right of action in him. The two questions are essentially different. Meeks v. Vassault, Fed. Cas. No. 9,393; Pence v. Aughe, 101 Ind. 317, 319; Ward v. Petrie, 157 N. Y. 301, 311, 51 N. E. 1002, 68 Am. St. Rep. 790. The first question was not argued; the second was. Inasmuch as a demurrer, though special, includes a general demurrer (Silver v. Rhodes, 2 Har. [Del.] 369, 375),

and inasmuch as the failure of a declaration to show a right of action in a plaintiff is a matter of substance and may be taken advantage of by a general demurrer (Lytle v. Lytle, 2 Metc. [Ky.] 127; Weidner v. Rankin, 26 Ohio St. 522), and as the question whether the declaration shows any right of action in the Director General was discussed in argument and in the briefs of the respective parties, it will be here considered.

[2] This is an action in tort. Elliott on Contracts, vol. 3, § 2685. "The action for a tort must in general be brought in the name of the party whose legal right has been affected, and who was legally interested in the property at the time the injury thereto was committed." Chitty's Pleading (5th Am. Ed.) *48. A contract for the delivery of goods or chattels is a chose in action (Bushnell v. Kennedy, 9 Wall. 387, 19 L. Ed. 736), and a chose in action is property (Cincinnati v. Hafer, 49 Ohio St. 60, 30 N. E. 197). Hence it is necessary first to ascertain who was legally interested in or had the legal title to the contract at the time its breach was induced and the contract broken, as alleged, on June 14, 1918. The parties to the contract were Producers Refining Company, seller, and the plaintiff Railway Company, purchaser. Before the breach the plaintiff made an assignment thereof to Coline Oil Company. Though the beneficial interest passed thereby to the Coline Oil Company, the legal interest in the contract remained in the plaintiff Railway Company, notwithstanding the assignment. Hayward v. Andrews, 106 U. S. 672, 1 Sup. Ct. 544, 27 L. Ed. 271; New York, etc., Co. v. Memphis Water Co., 107 U. S. 205, 2 Sup. Ct. 279, 27 L. Ed. 484; Woolley's Del. Prac. 145; Dicey on Parties to Actions, p. 43. Likewise, before the time of the breach, the President of the United States, by a proclamation (40 Stat. 1733) made under an act of Congress of August 29, 1916 (39 Stat. 645), took possession and assumed control "of each and every system of transportation and the appurtenances thereof located wholly or in part within the boundaries of the continental United States," including that of the plaintiff Railway Company, and thereby directed "that the possession, control, operation and utilization of such transportation systems" should be exercised by and through a person thereby appointed and designated Director General of Railroads. At the time of the breach the Director General by governmental authority and warrant had for the time being the complete "possession, control, operation and utilization" of the railway system of the Gulf, Colorado & Santa Fé Railway Company to the exclusion of that company. Northern Pacific Ry. Co. v. North Dakota, 250 U. S. 135, 148, 39 Sup. Ct. 502, 63 L. Ed. 897. Under the allegations he then had like possession and control of the rights, property, of that company in, to, and under the contract in question.

The immediate and crucial question, as I see it, is whether the Director General thereby became vested with a legal interest in the contract. Upon first impression this appears to be a new question, but upon reflection it seems to differ in principle not at all from the rights of a sheriff in property seized by him under a writ of attachment or execution. The Director General took control by governmental au-

thority. A sheriff, acting under a valid writ, takes possession and control of property by like authority. I discern no distinguishing difference in the fact that the former acts under executive and the latter under judicial warrant, for both executive and judiciary are but coordinate branches of one government. Rights arising out of contract are, of course, intangible and incapable of manual seizure; but as the acts of Congress and the presidential proclamation contemplated "one control, one administration, one power for the accomplishment of the one purpose, the complete possession by governmental authority to replace for the period provided the private ownership theretofore existing" (Northern Pac. Ry. Co. v. North Dakota, 250 U. S. 135, 148, 39 Sup. Ct. 502, 63 L. Ed. 897), such rights were included among those over which the Director General was authorized to exercise exclusive control. The control over such rights may be as effectually interfered with as if they were tangible. Consequently the intangible nature of the property in question likewise fails to afford a distinguishing difference. The rights of a sheriff in property seized by him have been long settled. He has in such property a legal interest, described and defined as "a special property," sufficient to enable him to maintain an action against anyone interfering with his possession or control. 24 R. C. L. 1001. For the foregoing reasons I am of the opinion that, under the allegations and without regard to the assignment of the Coline Oil Company of July 1, 1919, the Director General had a legal interest or special property in the contract at the time of its alleged breach, and that he may maintain an action to recover damages for malicious interference therewith.

[3] The second cause of demurrer, charging that the declaration fails to show any concerted action on the part of the defendants in the commission of the alleged tort, seems indirectly to assert that there is a misjoinder of parties defendant. The allegations of the declaration touching this matter are that—

"The said defendants and each of them, * * * for the purpose of devoting the property * * * of said Producers Refining Company to them and each of their own use and benefit, * * * caused * * * the said Producers Refining Company to commit a total breach of said agreement."

The general rule of law is that to maintain an action in tort against several codefendants it is essential that the wrong complained of be joint. Dicey on Parties to Actions, 431. Several persons, acting, not in concert, but separately and independently, may not ordinarily be joined as defendants in actions ex delicto. 26 R. C. L. 764. The rule is the same, even though the injury to the plaintiff arise out of the simultaneous acts of such persons. Sadler v. Great Western R. Co., [1895] 2 Q. B. 688. This is not an arbitrary rule of law, but is one founded upon reason and justice. One person should not be made liable in damages for the distinct and independent wrongs of another. Yet this result would follow if tort-feasors, acting independently and not in concert, be joined as defendants, for the writ of execution must follow the judgment, and each defendant in such writ is liable for the whole debt. 17 R. C. L. 202. Where, however, the tortious acts of sev-

eral supplement one another and directly contribute in producing a single indivisible injury, such persons are in legal contemplation joint tort-feasors by reason of the indivisibility of the resulting injury to which each contributed, although there was no concerted action. Cooley on Torts (3d Ed.) 247; Graves v. City & Suburban Telegraph Ass'n et al. (C. C.) 132 Fed. 387; 26 R. C. L. 763. A concise and accurate statement of the law, as I understand it, is found in Allison v. Hobbs, 96 Me. 26, 29, 51 Atl. 245, 246. It is there said:

"Again, while it is true that persons who act separately and independently, each causing a separate and distinct injury, cannot be sued jointly, even though the injuries may have been precisely similar in character and inflicted at the same moment, yet if such persons, acting independently, by their several acts directly contribute to produce a single injury, each being sufficient to have caused the whole, and it is impossible to distinguish the portions of injury caused by each, they are then joint tort feasors within the rule, and may be sued either jointly or severally at the election of the plaintiff, and in such an action against one or more the whole damage may be recovered."

Applying these principles of law to the declaration in the case at bar, I find no sufficient allegations therein showing any joint or concerted action on the part of the defendants in committing the tort alleged, nor do I find that the injury resulting from the acts of the defendants was single and indivisible. True, it is alleged that there was a total breach of the contract; but the total breach of a contract for the sale of a commodity such as oil may be single, or it may result from each of two or more persons separately inducing the seller to deliver to him a specified quantity, less than the whole, of the oil bargained and sold by the contract, the aggregate of the several lesser quantities amounting to the whole.

[4] The question raised by the third cause of demurrer is one touching the form, and not the substance, of the declaration. That the declaration is sufficient in substance is not questioned. That it sets forth the acts of the defendants with sufficient particularity and certainty is denied. The plaintiffs rely upon Walker v. Cronin, 107 Mass. 555, and O'Reiley v. Bevington, 155 Mass. 72, 29 N. E. 54; but, as I understand those cases, all questions therein considered pertained only to matters of substance. The degree of particularity and certainty required in declarations has been considered numerous times by the courts of the state of Delaware. Campbell v. Walker, 1 Boyce (Del.) 580, 76 Atl. 475; Valerii v. Breakwater Co., 3 Boyce (Del.) 196, 84 Atl. 222; Jones' Adm'r v. People's Ry., 4 Pennewill (Del.) 201, 53 Atl. 1065; Newton v. People's Ry., 4 Pennewill (Del.) 350, 55 Atl. 2. Tested by the rule of those cases, the declaration of the present case is defective, in that it fails to set out in what respect or manner the defendants "caused, required, procured, influenced, persuaded, induced, and compelled" the Producers Refining Company to breach its contract.

The second count does not require separate consideration. What has been said as to the first count applies equally to the second.

The demurrer to each count must be sustained.